# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-435V
UNPUBLISHED

| | |
|---|---|
| LAURA LAW,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: July 29, 2025 |

*Isaiah Richard Kalinowski*, Bosson Legal Group, Fairfax, VA, for Petitioner.

*Nina Ren*, U.S. Department of Justice, Washington, DC, for Respondent.

**RULING ON ENTITLEMENT**[1]

On January 8, 2021, Laura Law filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 30, 2019. Petition at 1, Amended Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.     **Relevant Procedural History**

On November 7, 2023, Respondent filed a Rule 4(c) Report opposing compensation. ECF No. 39. Specifically, Respondent argues that Petitioner cannot meet the severity requirement of the Vaccine Act, and that the medical records do not reflect onset of shoulder pain within 48 hours of vaccination or that her pain was limited to her vaccinated shoulder. *Id.* at 13-18. On February 19, 2024, Petitioner filed a Motion for a Ruling on Entitlement Based on Extant Record ("Mot."), ECF No. 43. Respondent opposed the motion on April 18, 2024, reiterating the arguments set forth in the Rule 4(c) Report. Respondent's Opposition to Petitioner's Motion for a Ruling on the Record ("Opp."), ECF No. 45. Petitioner filed a reply on May 1, 2024. Petitioner's Reply Memorandum in Support of Petitioner's Motion for Ruling on Entitlement Based on Extant Record and Response to Respondent's Cross-Motion in Opposition ("Reply"), ECF No. 46. The matter is ripe for resolution.

II.    **Petitioner's Medical Records**

Petitioner received the flu vaccine in her left arm on October 30, 2019. Ex. 2. There is no evidence of preexisting left shoulder issues.

Between the date of vaccination and February 2020 (more than three months), Petitioner attended numerous medical appointments. These include an emergency room visit on November 30, 2019, for a hot and itchy body rash for two days (Ex. 35 at 5300-06), a visit with her cardiologist on December 19 and 20 (Ex. 10 at 11, 21), a visit to the emergency room on January 30, 2020 for a three-day history of body aches and edema (Ex. 35 at 5345, 5355-60), a routine appointment with her primary care provider on January 6, 2020 (Ex. 22 at 86-88), and an emergency room visit on February 8, 2020 for a moderate aching occipital headache. Ex. 16 at 139. There is no mention of shoulder pain or limited range of motion during this period, however. She also had a breast examination on January 15, 2020, when she reported pain in her right armpit but did not mention shoulder issues. Ex. 9 at 17. Further, she received a Shingrix vaccine in her left shoulder on January 30, 2020. Ex. 16 at 8.

On February 12, 2020, Petitioner complained of pain in her shoulders "where she got a flu shot (left arm 10/19) and pneumonia shot (right arm [sic] 01/20)." Ex. 22 at 89. In a letter dated February 5, 2024, Petitioner's doctor stated he did not perform a physical exam of her shoulders. Ex. 42. X-rays taken on February 19, 2020, were unremarkable. Ex. 4 at 9-10.

2

Over the next four and a half months, Petitioner had approximately fourteen visits and calls with medical care providers for unrelated medical issues, including treatment for a bladder tumor, telehealth visits for high blood pressure, visits with her cardiologist, and care by a dermatologist. Exs. 16 at 233; 22 at 95; 4 at 11; 10 at 14, 28; 21 at 28. There is no mention of shoulder pain during this period. However, she did receive a second Shingrix vaccine in her left arm on April 26, 2020. Ex. 16 at 8.[3]

On June 30, 2020 (now eight months post-vaccination), Petitioner reported bilateral arm pain (left more than the right) among other concerns to her rheumatologist. Ex. 5 at 201. The treater noted bilateral tenderness and user-finding of painful left shoulder range of motion. *Id.* at 203. An MRI on July 15, 2020, showed moderately severe tendinosis with a focal insertional tear, bursitis, capsulitis, and a Type III acromion. *Id.* at 204.

Between June 30 and August 18, 2020, Petitioner attended four additional medical appointments with no mention of shoulder pain, including with her primary care physician, a hematologist, a dermatologist, and for internal medicine. Ex. 15 at 16; Ex. 22 at 102; Ex. 14 at 46; Ex. 21 at 4.

Petitioner returned to her rheumatologist on August 18, 2020. Ex. 5 at 205. She now reported right shoulder pain and continued uncontrolled left shoulder pain. *Id.* She was diagnosed with a left rotator cuff tear and referred to an orthopedic surgeon. *Id.* at 207-08.

Petitioner later saw an orthopedic surgeon, on August 19, 2020. Ex. 6 at 6. This treater noted that Petitioner had experienced "shoulder pain [] since Oct. 2019, no injury, had vaccine and started experiencing pain afterwards." *Id.*[4] Her left shoulder pain had a gradual onset and occurred in a progressive, intermittent pattern. *Id.* She was diagnosed with adhesive capsulitis and a complete rotator cuff tear. *Id.* at 7-8. On August 31, 2020, Petitioner began physical therapy for bilateral shoulder pain, right elbow pain, and lower extremities pain. Ex 7 at 6. She recalled an 11-month history of pain with "the most recent exacerbation of symptoms in 5/2020 a[f]ter receiving flu shot…." *Id.*

---

[3] The amended petitioner states that the vaccination record is incorrect, and that that Shingles vaccine was administered in Petitioner's right shoulder. Further, she refused the vaccine in her left shoulder because "of the pain she had been experienced in her left shoulder…." Amended Petition at 3.

[4] The records first states "R shoulder pain" since October of 2019, however this appears to be in error as it then describes left shoulder pain. Further, Petitioner received a vaccination in her left shoulder in October of 2019.

Petitioner returned to the orthopedist on October 8, 2020, who recommended that she complete her physical therapy and consider "sx". Ex. 6 at 4-5. She saw this treater again on November 9, 2020, and received a methylprednisolone injection, along with arthrocentesis in her left shoulder. *Id.* at 2-3.

Over the next thirteen months, Petitioner sought care for non-shoulder related conditions including back pain (ex. 5 at 209-12, ex. 29 at 61, ex. 36 at 16 (MRI and x-ray); ex. 36 at 22 (steroid injection and transforaminal epiduorgram)); upper raspatory issues such as a cough (ex. 15 at 9, 6, 3, ex. 29 at 120); Breast exam ex. 16 at 210, ex. 29 at 57 (mammogram); Caudal epidural injection (ex. 36 at 2); and a brain CT scan (ex. 29 at 59). Petitioner also saw doctors in a variety of specialties, including dermatology (ex. 21 at 2, 3, 30); urology (ex. 17 at 5; ex. 38 at 118); hematology (ex. 14 at 24, ex. 38 at 51, 40); cardiology (ex. 10 at 17); primary care (ex. 22 at 116, 119, 122, 126, 130; ex. 29 at 1); Physiatry (ex. 41 at 25, ex. 29 at 125, ex. 36 at 10, ex. 26 at 16, ex. 36 at 34, 27, 32; ex. 32 at 5); and the rheumatologist for joint pain, back pain, leg pain, lumbar radiculopathy (ex. 30 at 1-3, 4).

Petitioner next sought care for shoulder problems on December 7, 2021. She reported pain and swelling after a flu shot.[5] An MRI showed a small glenohumeral joint effusion, but no solid or cystic mass. Ex. 25 at 2. She otherwise treated for non-shoulder related issues throughout the winter of 2021-22, seeing numerous specialists for internal medicine (ex. 29 at 117); urology (ex. 29 at 115); hematology (ex. 38 at 105, 27, 57); her primary care physician (ex. 29 at 4, 7, 10, 14); cardiology (ex. 40 at 8, 11; ex. 29 at 112, ex. 40 at 15, 18); and neurosurgery for lower body pain and lumbar pain (ex. 29 at 105, 90). She also saw her rheumatologist for unspecified shoulder tenderness (ex. 30 at 11, 16) and went to the emergency room (ex. 29 at 70).

Petitioner saw the orthopedist again on June 23, 2022, for a follow-up regarding left shoulder pain. Ex. 29 at 96. Her pain was described as sharp and intermittent, with onset being gradual that worsened to now being severe. *Id.* An examination showed tenderness, reduced range of motion, with positive impingement signs. *Id.* at 96-97. She was diagnosed with a complete left rotator cuff tear and prescribed physical therapy. *Id.*

On July 8, 2022, Petition underwent arthroscopic surgery. Ex. 29 at 17; Ex. 41 at 83.

---

[5] Petitioner reported a flu shot on November 19, 2019; however, this appears to be erroneous. She received a flu vaccine on October 30, 2019.

December 8, 2022, saw her rheumatologist for joint and lower back pain. Ex. 30 at 18. She also reported left shoulder pain; however, an examination exam did not show tenderness. *Id.* at 19-20.

### III.    Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[6] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

---

[6] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Severity Requirement

The first issue to be resolved is whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There is no dispute that Petitioner received the flu vaccine on October 30, 2019. Therefore, she must demonstrate by preponderant evidence that her residual symptoms continued at least through April 30, 2020 (assuming onset of pain the day of vaccination). *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070,

at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record establishes that Petitioner first reported shoulder pain on February 12, 2020, ten weeks after vaccination. Ex. 22. She did not mention such concerns again until June 30, 2020, and an MRI performed thereafter on July 15, 2020 showed tendinosis, bursitis, and capsulitis among other ailments. Ex. 5 at 203. And there are references to continued left shoulder pain through August 2020, including linking Petitioner's pain to the October vaccination. Ex. 6 at 6. Further, the records from August of 2020, states that Petitioner had pain "since Oct. 2019" and described an 11-month history of pain. Ex. 6 at 6, Ex. 7 at 6. This record alone, despite the gaps, does support an ongoing (if intermittent and mild) injury.

Respondent emphasizes that Petitioner delayed ten weeks to report shoulder pain, followed by a four-and-a-half month gap in treatment. Opp. at 9. Further, he contends that adhesive capsulitis can occur spontaneously. *Id.* Therefore, Petitioner's pain described in June of 2020 cannot be presumed to be a continuation of the post-vaccination pain reported in February. *Id.* He also observes that during the gap in treatment, Petitioner "was accustomed to interacting with her providers through phone calls or virtual appointments." Opp. at 11. It is true that Petitioner attended medical appointments during this time, but did not describe any ongoing shoulder pain or range of motion issues. However, as Petitioner notes, to the extent she sought treatment during this period, it was limited to addressing emergent concerns such as a bladder tumor. Mot. at 4.

The overall record thus constitutes a sufficient, albeit close, showing of severity to meet the evidentiary standard. It is likely that Petitioner's symptoms persisted through the six-month deadline, despite the gaps in formal treatment. However, the consistently light history of treatment suggests a mild injury - which will likely impact damages in this case.

### B. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain fourteen weeks after her October 20, 2019 vaccination, when she specifically stated that she had shoulder pain "where she got a flu shot". Ex. 22 at 89. Thereafter, she consistently linked her shoulder pain to the flu shot. *See* Ex. 6 at 6 (record from August 19, 2020 stating that Petitioner had pain in her left shoulder "since Oct. 2019"); Ex. 7 at 6 (record from August 31, 2020 describing an eleven-month history of shoulder pain) at 3-4.

Respondent argues that Petitioner had multiple opportunities to describe shoulder pain between October 2019 and February 2020, but failed to do so. Opp. at 6. Even so, a finding of proper onset can be made based on such a record. Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner consistently linked her shoulder pain to the October 2019 vaccination.

Further, it is common for SIRVA petitioners to delay seeking treatment, thinking the injury will resolve on its own, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after. And individuals also often misconstrue the nature of their injury, and therefore fail to inform treaters of all specific facts relevant to onset until later. Otherwise, Petitioner affirmatively and repeatedly linked her shoulder pain to the flu vaccine.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

That record shows that Petitioner received a flu vaccine intramuscularly on October 16, 2019, in the United States. Ex. 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 1 at 2; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u><br>
Brian H. Corcoran<br>
Chief Special Master